## United Mine Workers of America, Local Union 6659, v. Jones et al.

May 8, 1942.

George R. Pope for appellant.

Clarence Cornelius for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

The Black Mountain Corporation, hereinafter referred to as the Company, operated one coal mine at Keniver and another at Coxton, both located in Harlan County. The County Board of Education, conducted a common school at Keniver, with a branch at Coxton, for a term of seven months. An extension of the school term to nine months was desired by parents of some of the children, and a plan was devolved by representatives of the county school system, the local unions of the United Mine Workers of America working in the two above mentioned mines, and the Company, whereby it was agreed that the teachers employed in the two schools would continue teaching for two additional months and the Company would deduct $1 per month from each employee's wages for four months to pay the teachers. The employees of the Blue Diamond Coal Company living at Coxton were also to pay $4.

To put this plan into effect an undated agreement was entered into between the two local unions and the Company whereby the Company would make the wage deductions and deliver same to a School Finance Committee, which was to pay the teachers' salaries according to an itemized statement furnished by the County Superintendent of Schools. The Finance Committee was to be composed of four men, one named by each local union and two by the Company, and one member thereof was to be a bonded treasurer and keep a record of receipts and disbursements. It was agreed between the two local unions and the Company that this plan would become effective upon a majority of the employees signing a written contract embodying the agreement and directing the Company to make the wage deduction. There were 499 employees at the Keniver mine under the jurisdiction of local union No. 4493 and 457 employees at the Coxton mine under the jurisdiction of local union No. 6659, therefore the contract was printed in large numbers and copies were submitted to each employee for signature.

The Company made the wage deduction but local

union No. 6659 refused to name a member of the Finance Committee, consequently the money remained in the Company's hands and the teachers were never paid. Some 300 miners joined as plaintiffs in one action filed on Aug. 8, 1941, in the Harlan Quarterly Court wherein each sought judgment against the Company for the $4 it had deducted from their wages, alleging the deduction was made against their consent and through duress and fraud. That action is referred to in the record as the Pressley case.

On Nov. 29, 1941, the 22 teachers filed a petition in equity in the Harlan Circuit Court against the Company and the two local unions, wherein they pleaded the terms of the contract and that same had been signed by a majority of the employees and that the respective sums set out in the petition were due the respective teachers from the funds held by the Company. A mandatory injunction was asked requiring the defendants to name members of the Finance Committee, requiring the Company to turn over to the Committee the fund and requiring the Committee to pay each teacher the amount set out in the petition as due him or her.

The Company and local union No. 4493 separately answered that they were willing to make their appointments to the Finance Committee and for the fund to be paid to the teachers. However, the Company pleaded that the action in the Quarterly Court should be determined by a court of competent jurisdiction before it should be required to turn over the fund to the Committee. On motion of the Company the Harlan Circuit Court transferred the Pressley case to that court. The Company filed a special demurrer to the petition in the Pressley case because of improper parties plaintiff and asked that the court require which of the plaintiffs improperly joined would prosecute the action, and that it be dismissed as to the other plaintiffs. In an answer filed in the circuit court in the Pressley case the Company pleaded the two local unions representing their members were authorized to, and did, enter into an agreement with the Company authorizing it to make the wage deductions and the union members are estopped to deny the Company's right to do so.

In answering the injunction suit the two local unions affirmatively pleaded that 196 unsigned agreements were improperly counted in determining that 51.77% of the

employees were in favor of the wage deduction; also, that 7 agreements signed by nurses and doctors in the Company's hospital, who were not employees of the Company, were likewise improperly counted. It is averred that these 203 names should be stricken from the list of those approving the school plan, which would leave less than 30% of the employees favoring the wage cut, therefore the agreement never became effective. A reply completed the issue.

The proof was heard orally by the chancellor who held it showed that a majority of the employees signed the agreement authorizing the Company to make the wage deduction. The plaintiff was granted a mandatory injunction which required the defendants to name the Finance Committee and required the Company to turn over to it the fund which the Committee was ordered to disburse among the teachers in the certain amount due each teacher. The petition in the Pressley case was dismissed. Only local union No. 6659 appeals.

No bill of exceptions was filed, hence appellee's motion to strike the transcript of the evidence and the volume of exhibits filed therewith must be sustained. When proof in an equity case is heard orally before the chancellor pursuant to Section 552, Subsection 2 of the Civil Code of Practice, it is necessary that a bill of exceptions be prepared and filed as is required by Section 334 of the Civil Code of Practice relating to common law actions. Claypool v. Rutherford, 285 Ky. 321, 147 S. W. (2d) 702; Duvall v. Marshall, 280 Ky. 81, 132 S. W. (2d) 511. With the transcript stricken, the only question left is whether the pleadings support the judgment. Rose v. Knox County Fiscal Court, 279 Ky. 611, 131 S. W. (2d) 498.

Appellant appears to have confused the writ of mandamus as provided, in Section 477 of the Civil Code of Practice with the remedy of mandatory injunction outlined in Section 271 et seq., of the Code. A large part of his brief is devoted to the argument that mandamus will not lie against a private corporation or its officers entrusted with the performance of no governmental function and having no right to exercise any power of a public nature. Mandamus is not involved in this case at all. The plaintiffs sought to compel defendants to comply with their contract and to set up the machinery which would enable the Finance Committee to deliver to the plaintiffs the money which had been collected for their

benefit. While it is true a mandatory injunction will not lie to compel the payment of money to one to whom it is due and who has a remedy at law, H. Friedberg, Inc., v. McClary, 173 Ky. 579, 191 S. W. 300, L. R. A. 1917C, 777, such procedure is a proper remedy where a fund has been collected for a specific purpose and under a contract which provides the money can be disbursed only in the manner and form as therein directed. Owensboro Waterworks Co. v. City of Owensboro, 96 S. W. 867, 29 Ky. Law Rep. 1118; Caldwell & Co.'s Ancillary Receiver v. Landrum, 260 Ky. 77, 83 S. W. (2d) 876.

From the resume given of the pleadings it is apparent that they support the judgment, therefore it is affirmed.